FILED

AUG 04 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BITTERROOT HOLDINGS, LLC,** **Plaintiff,** v. **BANK OF NEW YORK MELLON,** **Defendant** | ) | **Civil Case No. 14-cv-804 (RCL)** |
| **BANK OF NEW YORK MELLON,** **Third Party Plaintiff** v. **ROBERT VANCE and GRETCHEN VANCE** **Third Party Defendants** | ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

This is a contest over the ownership of real property at 11 Champions Way, San Antonio, Texas. Bitterroot purchased the property after a foreclosure sale. Bank of New York (BONY) claims ownership through an assignment of the Note and Deed of Trust. On November 14, 2016, Magistrate Judge John Primomo issued a report and recommendation, advising that this Court deny Bitterroot's motion to strike BONY's motion for summary judgment, deny Bitterroot's motion to remand, deny BONY's motion for summary judgment, and grant third-party defendants Vances' motion to dismiss BONY's third-party claims. Before the Court are two sets of motions: first, the

several motions considered by Magistrate Judge Primomo in his Report and Recommendation, ECF No. 77; and second, dual motions for summary judgment submitted by BONY after the Report and Recommendation, ECF Nos. 117 & 118. The Court also considers defendant BONY's objections to Magistrate Judge Primomo's Report and Recommendation, and the Vances' response to BONY's dual motions. After consideration of these submissions, and in light of the entire record and applicable law, this Court concludes that defendant's objections should be overruled, that the analysis in Judge Primomo's Report and Recommendation will be accepted, and BONY's motion, ECF No. 117, will be denied and BONY's motion, ECF No. 118 will be granted in part and denied in part.

## II. BACKGROUND

On October 13, 2006, Robert and Gretchen Vance purchased property at 11 Champions Way, San Antonio, Texas. The property included covenants upon subsequent owners, which were recorded in the real property records of Bexar County, Texas on March 11, 1999. The declaration of covenants imposed various assessments on the owners of each home and reserved a lien in favor of the Champions Ridge Homeowners Association to secure payment of those assessments. The Homeowners Association lien was subordinate to any first mortgage and other liens securing the loans made to a purchaser of a unit from the developer.

The Vances' Deed of Trust and Note for the property was payable to Countrywide Home Loans, Inc., for a principal sum of $712,881.00.[1] The beneficiary of the deed was Mortgage Electronic Registration Systems, Inc. (MERS), acting on behalf of the lender Countrywide. Deed

[1] A deed of trust conveys legal title of real property to a trustee, who holds it as a security for the home loan between the borrower and lender, and it conveys equitable title in the property to the borrower. The lender is the beneficiary of the trust, and the trustee holds legal title in the property until the loan is paid off.

of Trust, ECF No. 117–3. The trustee was Reconstruct Company, N.A. In April 2008, Countrywide merged with Bank of America, N.A. In November 2008, the Vances stopped making payments on the note and stopped paying dues to the Homeowners Association.

At some point in 2009, the Vances moved out of the property. According to the Vances, this was due to letters indicating their note had been accelerated and the property would be foreclosed upon. In November 2010, the Homeowners Association foreclosed on the property, selling it at a foreclosure sale. The Homeowners Association was the highest bidder and purchased the property for $10,207.82. The Vances failed to redeem the property, and were completely divested of any interest in the property.

On April 11, 2011, MERS—the beneficiary of the original deed of trust—conveyed its rights under the deed of trust to BONY. On May 5, 2011, the Homeowners Association conveyed the property to DTND Sierra Investments, LLC by special warranty deed.[2] On January 1, 2014, DTND executed a special warranty deed conveying the property to Bitterroot.

On August 11, 2014, BONY issued notice to the Vances through its mortgage servicer, Specialized Loan Servicing, LLC (SLS), that the payments were past due on the balance of the mortgage, that the debt was being accelerated, and that the property would be foreclosed upon. According to BONY's Notice of Acceleration and Foreclosure Notice Letter, the foreclosure sale would occur September 2, 2014. A few weeks later, on August 28, 2014, Bitterroot filed suit in Texas state court, claiming trespass to try title and seeking a declaration as to the ownership. On September 11, 2014, BONY removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a). Concurrently with removal, BONY filed a counterclaim seeking recovery of

[2] According to BONY, the same individuals own and operate both Bitterroot and DTND.

attorney's fees and costs, judicial foreclosure on its lien, and a declaratory judgment that the lien was valid. ECF No. 1–4. Then, on September 26, 2014, BONY filed a third-party complaint against Robert and Gretchen Vance, the former owners of the property, as necessary parties to the action. ECF No. 3. BONY again sought judicial foreclosure on the lien and a declaratory judgment that the lien is valid, but did not seek any monetary recovery, attorney's fees, or other costs from the Vances. *Id.* The Vances later filed counterclaims against BONY alleging various violations of consumer protection statutes. ECF No. 30.

At bottom, this case is a dispute over interest in the property between Bitterroot, which traces its interest to the Homeowners Association lien, and BONY, which traces its interest to the superior purchaser lien created by the deed of trust. The Vances, brought in by BONY's third-party complaint, assert counterclaims based on BONY's attempt to oust Bitterroot. This dispute apparently generated considerable animosity, as several parties have moved to strike filings, to enter default and/or summary judgment, and to impose sanctions against one another. Many of the motions for summary judgment argue and re-argue the same central dispute: whether a fact issue exists regarding an acceleration of the debt on the property.

This case was previously referred to Magistrate Judge Primomo for the resolution of several of those motions. Magistrate Judge Primomo issued a Report and Recommendation regarding ten motions on November 16, 2015. R. & R., ECF No. 77. A more rich recitation of the factual background of this case can be found there. Judge Primomo noted that the motions filed by Bitterroot and the Vances bordered on frivolous, burdening the Court unnecessarily with motions to strike and motions for default. *Id.* Judge Primomo recommended those motions be denied. Judge Primomo also recommended that BONY's claims against the Vances and all but

one of the Vances' third-party counterclaims against BONY be dismissed, but that the other motions for summary judgment be denied. *Id.*

The parties filed objections and motions to strike the November 2015 Report and Recommendation, but Judge Biery ordered the case administratively closed pending the appeal of *Bitterroot Holdings, LLC v. MTGLQ Investors, LP*, No. 15–51116 (5th Cir. May 13, 2016). ECF No. 93. Following the resolution of that appeal, the case was re-opened and re-assigned to Magistrate Judge Primomo. ECF Nos. 95 & 100. The ten motions he had initially disposed of in the November 2015 Report and Recommendation were dismissed with leave to reurge at a later date. Thus, the claims and counterclaims that had been recommended to be dismissed by Judge Primomo remained live.

On September 29, 2016, BONY moved for summary judgment on its claims against Bitterroot in a forty-three page filing. ECF No. 101.[3] The Vances quickly followed suit, moving to dismiss claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 104. Bitterroot then moved to strike BONY's motion for summary judgment and to remand to state court. ECF Nos. 109 & 110. On November 14, 2016, Judge Primomo issued his Report and Recommendation regarding those motions. ECF No. 114.

BONY objected to Judge Primomo's conclusion that the motion for summary judgment be denied, but did not object to his recommendations for the other motions. ECF No. 116. Neither Bitterroot, nor the Vances, objected to the Report and Recommendation. BONY then moved for

---

[3] Judge Primomo had granted leave to file an expanded motion beyond the normal limitations imposed by the Local Rules, though the Court would later lament the ruling. ECF No. 108. "The Court has no recollection of what possessed it to grant BONY's motion fo file a 43-page summary judgment motion." R. & R. 9, n. 1, ECF No. 114.

summary judgment on its counterclaims and third-party claims against Bitterroot and the Vances. ECF Nos. 117 & 118. The Vances responded, ECF No. 121, but Bitterroot did not.

On January 12, 2017, this case was re-assigned to the docket of Judge Royce C. Lamberth. ECF No. 120. The Court now considers both the Report and Recommendation, ECF No. 114, and BONY's motions for summary judgment, ECF Nos. 117 & 118, in light of the respective responses and objections, the record, and the applicable law.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of establishing the lack of a genuine issue of material fact. *Id.* "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant does not bear the burden of proof at trial, he is entitled to summary judgment if he can point to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Similarly, a movant without the burden of proof at trial may be entitled to summary judgment if sufficient evidence "negates" an essential element. *Id.* The lack of proof as to an essential element renders all other facts immaterial. *Id.*

A fact is material if it could affect the outcome of a case. *Anderson*, 477 U.S. at 247. A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the

nonmoving party." *Id.* To survive summary judgment, a nonmoving party must present specific facts or evidence that would allow a reasonable factfinder to find in his favor on a material issue. *Anderson*, 477 U.S. at 247. However, merely asserting a factual dispute or conclusory denials of the allegations raised by the moving party is insufficient; the nonmoving party must come forward with competent evidence. *Id.* at 249–250. The nonmoving party may set forth specific facts by submitting affidavits or other evidence that demonstrates the existence of a genuine issue. *Id. See also* FED. R. CIV. P. 56(c). Competent evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.*

Pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 4 of Appendix C to the Local Rules of the United States District Court for the Western District of Texas, a party may serve and file specific, written objections to the proposed findings and recommendations of the Magistrate Judge within fourteen days after being served with a copy of the Report and Recommendation, and thereby secure de nova review by the district court. Where no party has objected to a Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review as to the unobjectionable portions. *See* 28 U.S.C. § 636(b)(l) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). Failure to file written objections bars a party, except upon grounds of plain error, from attacking on appeal the unobjected-to findings or conclusions accepted by the district court. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).

## IV. ANALYSIS

The Court considers two sets of motions. First, the Court considers motions detailed in Judge Primomo's current Report and Recommendation. ECF No. 114. Second, the Court considers BONY's motions for summary judgment. ECF Nos. 117 & 118.

### A. The Court will overrule BONY's objections and adopt the Report and Recommendation, ECF No. 114.

BONY's objection to the Report and Recommendation is focused entirely on the application of the Best Evidence Rule and whether Magistrate Judge Primomo properly considered Gretchen Vance's testimony when he found a fact issue existed as to whether the Vances received Notice of Acceleration letters in 2009. This fact question is relevant solely to BONY's motion for summary judgment for its claims against Bitterroot, and BONY does not object to Magistrate Primomo's recommendations that this Court grant the Vances' motion [104] to dismiss, deny Bitterroot's motion [109] to remand, and deny Bitterroot's motion [110] to strike. Accordingly, seeing no error in Judge Primomo's findings as to those motions, the Court will adopt the report and recommendation as to those motions.

Further, for the reasons discussed below, the Court will overrule BONY's objections to Magistrate Judge Primomo's recommendations and deny BONY's motion [101] for summary judgment as to Bitterroot's claims.

#### *1. Bitterroot's Claims Against BONY*

As noted by BONY in its motion for summary judgment, Bitterroot's lawsuit is premised solely on the allegation that BONY's cause of action for foreclosure accrued more than four years prior, outside the statute of limitations period established by Texas law. There is no question that Bitterroot's interest in the property, which it acquired from the Homeowners Association for

$10,000, is inferior to BONY's superior interest. However, Bitterroot argues that BONY's lien is void based on its failure to foreclose on the property within a timely manner. BONY, in its motion for summary judgment, seeks to establish that its foreclosure action accrued on August 11, 2014, within the four-year statute of limitation cited by Bitterroot.

In Texas, an action for foreclosure or the forced sale of real property lien must be brought within four years of the day a cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a)-(b). When this four-year period expires, the property lien and the power to force the sale or enforce the lien becomes void, and the property may no longer be foreclosed upon. TEX. CIV. PRAC. & REM. CODE § 16.035(d); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). Under Texas law, if a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated. *Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App.—Dallas 2008, no pet.). If the note or deed of trust contains an option, the action accrues only when the holder actually exercises that option and accelerates the note. *Holy Cross*, 44 S.W.3d at 566.

Acceleration requires two acts (1) notice of intent to accelerate and (2) notice of acceleration. *Id.* These notices must be clear and unequivocal. *Id.* However, after the requisite notice of intent to accelerate, the actual notice of acceleration is not required to include particular language or take a particular form, so long as the acceleration of the debt is clear and unequivocal. *See Burney*, 244 S.W.3d at 903–04 (allowing the filing of an expedited foreclosure action to serve as notice of acceleration). Once these notices are given, the lienholder must either seek to enforce the lien within four years or abandon the acceleration. Acceleration of a note can be abandoned by agreement of the parties or other unilateral actions of the lender, such as sending a notice of default requesting less than the full amount of the loan or accepting payments without exacting

any available remedies. *Boren v. U.S. Nat'l Bank Ass'n,* 807 F.3d 99, 105 (5th Cir. 2015); *Alcala v. Deutsche Bank Nat'l Trust Co. for Long Beach Mortgage Loan Trust 2006-5*, 2017 WL 1279227, at * 2 (5th Cir. April 6, 2017); *Holy Cross*, 44 S.W.3d at 566–67. Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's maturity date and resetting the four-year statute of limitations. *Holy Cross*, 44 S.W.3d at 566. However, if the lienholder does not file suit or abandon the acceleration within four years, the lien becomes void and the property may no longer be foreclosed upon by that lienholder. *Id.* at 567; TEX. CIV. PRAC. & REM. CODE § 16.035(d).

This case was filed on August 28, 2014 in Bexar County District Court. BONY moved for summary judgment, arguing that Bitterroot had no evidence that would allow a reasonable fact-finder to infer the foreclosure had accrued more than four years prior. That is, BONY claims Bitterroot has no evidence that the loan was effectively accelerated before August 28, 2010. BONY also claimed that if the loan was accelerated more than four years prior, the acceleration was abandoned and the debt was re-accelerated within the relevant four-year window.[4]

Bitterroot, in its response to summary judgment, presented the testimony of Gretchen Vance that she had received letters from Bank of America accelerating the debt in early 2009. Vance Depo. 52:17–56:23, ECF No. 111–4. Specifically, Vance testified that she received a letter in February or March of 2009 demanding the full balance of the home loan—approximately $700,000 plus additional fees—but that she did not keep any copies of the document. *Id.* Rather, Vance testified that she left the property in 2009 because there was no way they would be able to pay the full debt. *Id.* According to Bitterroot, this creates a fact question precluding summary

[4] Judge Primomo found that BONY's purported acts of abandonment occurred outside the limitations period, and that any such abandonment could not have reset the limitations period. BONY did not object to this finding. Accordingly, this Court adopts Judge Primomo's analysis regarding BONY's abandonment arguments.

judgment because if Bank of America did accelerate the debt in 2009, BONY's foreclosure proceedings in 2014 were barred by Texas' four-year statute of limitations on foreclosures.

BONY, in its motion and reply before Judge Primomo, argued that Vance's testimony was inadmissible under the Best Evidence Rule. Rule 1002 of the Federal Rules of Evidence states "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. According to BONY, the Vances' evidence improperly relies on testimony to prove the contents of the purported acceleration notice. In other words, BONY claims that the content of the 2009 letter—*i.e.* whether it demanded the full amount be paid—is at issue, and Vance's testimony cannot be used to prove content of the letter. Thus, according to BONY, the Best Evidence Rule places the burden on plaintiffs to produce the original copy of the purported notice of acceleration, rather than using Vance's testimony. Without the physical copy, BONY claims Bitterroot is unable to raise a fact question as to whether the loan was accelerated in 2009, and the Court should enter summary judgment in favor of BONY.

### *2. Magistrate Judge Primomo's Findings*

Judge Primomo agreed with Bitterroot, recommending that this Court deny BONY's motion for summary judgment because a genuine issue of fact exists as to the date of acceleration. R. & R. 14, ECF No. 114. Specifically, he noted that a similar issue had been considered in *Bitterroot Holdings, LLC v. MTGLQ Inv'rs, L.P.*, No. 5:14-CV-862-DAE, 2015 WL 6442622 (W.D. Tex. Oct. 23, 2015), aff'd sub nom. *Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x 414 (5th Cir. 2016), in which a property owner's testimony that he received a letter indicating the bank was accelerating his loan and going to foreclose on the home was admissible to show the property owner had received a notice of acceleration. *Id.* at 12. In light of the District

Court's holding in that case, Judge Primomo found that Vance's testimony was "admissible to the extent she averred that she received a Notice of Acceleration in early 2009." R. & R. 4, 13.

Further, Judge Primomo cited *Heinsohn v. Carabin & Shaw, P.C.* for the proposition that the rule only applies when a party seeks to prove the contents of a document. 832 F.3d 224, 234 (5th Cir. 2016). "[T]hat certain facts are contained in a document does not prevent an affiant from testifying as to those facts from her personal knowledge." *Id.* "Therefore, '[i]t is well-established that Rule 1002 does not apply in situations where the mere existence of an independent factual condition is sought to be proved, even if the condition is contained in or effectuated through a writing." *Id.* (quoting *United States v. Smith*, 804 F.3d 724, 730 (5th Cir. 2015)) (emphasis added). Thus, according to Judge Primomo, Vance's testimony concerns an independent factual condition—the purported acceleration of the debt in 2009—and does not seek to prove the contents of the letter itself. Judge Primomo found that Gretchen Vance's testimony was admissible to show that the Vances received a notice of acceleration in 2009.

Finally, Judge Primomo also suggested that even if the Best Evidence Rule applied, that an exception would allow Vance's testimony. Rule 1004 excuses the production of an original to prove the contents of a document if the original is lost or destroyed. Thus, even if the Best Evidence Rule applied to Vance's testimony, Judge Primomo suggested Vance's testimony was admissible under Rule 1004 if the 2009 letter was lost or destroyed or otherwise unobtainable.

### *3. BONY's Objections*

BONY's objection to the report and recommendation by Judge Primomo re-asserts its arguments that the Best Evidence Rule bars Vance's testimony. Obj. 3, ECF No. 116. Further, BONY appears to object to Judge Primomo's conclusion that the Fifth Circuit's holding in

*Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*, does not require a finding that Vance's affidavit is insufficient to raise a genuine issue of material fact regarding that a notice of acceleration was sent. *Id.* at 6. The Court will address these objections separately.

*a. The Best Evidence Rule*

Generally speaking, the only competent evidence to prove the contents of a document is the document itself. FED. R. EVID. 1002. Thus, Rule 1002 applies when a litigant seeks to prove the content of a writing, recording, or photograph. *United States v. Smith*, 804 F.3d 724, 730 (5th Cir. 2015). But when a litigant seeks to prove an independent factual condition, even if it was "contained in or effectuated through a writing," Rule 1002 *does not* apply. *Id.* "[A]n event may be proved by nondocumentary evidence, even though a written record of it was made . . . . For example, payment may be proved without producing the written receipt which was given. Earnings may be proved without producing books of account in which they are entered." FED. R. EVID. 1002 advisory committee's note. Thus, Rule 1002 does not apply when a party seeks to prove the mere existence of a writing that effectuated some event, such as a sale or incurring a debt. *See Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1993) (concluding the rule did not preclude proving the existence of a debt through an affidavit rather than bank documentation); *United States v. Sliker*, 751 F.2d 477, 483 (2d Cir. 1984) (recognizing that production of a written insurance policy was unnecessary to prove the existence of the policy, because the party was proving "the fact of insurance and not of the contents of a writing"). Whether Bitterroot is seeking to prove the contents of the letter, as opposed to the existence of the letter or the occurrence of an event—the acceleration of the debt—as an independent factual condition, is the critical question here.

The Fifth Circuit has articulated factors to be considered in "distinguishing between whether it is the content of the document or merely its existence that a witness intends to testify concerning." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 218–19 (5th Cir. 2005). Those factors are:

> a) the relative importance of content in the case, (b) the simplicity or complexity of content and consequent risk of error in admitting a testimonial account, (c) the strength of the proffered evidence of content, taking into account corroborative witnesses or evidence and the presence or absence of bias or self-interest on the part of the witnesses, (d) the breadth of the margin for error within which mistake in a testimonial account would not undermine the point to be proved, (e) the presence or absence of an actual dispute as to content, (f) the ease or difficulty of producing the writing, and (g) the reasons why the proponent of other proof of its content does not have or offer the writing itself.

*Id.* (quoting 5 Cristopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 570 (2d ed. 1994)). "[A] court must be careful in applying these factors so as not 'to hamper the inquiry without at all advancing the cause of truth.'" *Id.* (quoting *United States v. Manton*, 107 F.2d 834, 845 (2d Cir. 1939) (Sutherland, J., sitting as circuit judge)).

In that case, a district court was affirmed when it excluded affidavits, excerpts from the assignment agreement at issue, and a re-typed version of the agreement. *Id.* The affidavit testimony was allowed to prove the existence of an assignment agreement in a breach of contract action, but not the terms of the agreement. *Id.* The purported assignment concerned certain rights in land and purportedly included one party's right to collect payments. *Id.* The Circuit noted that it was undisputed that the actual agreement was in the possession of the parties, who had offered no justification for failing to admit copies of the agreement itself rather than affidavit testimony, that the fact of assignment and relevant time periods were critical issues central to the litigation, and that the assignment agreement "could not have been identified as such without reference to its content." *Id.* Thus, excluding oral testimony in favor of the original documentation to prove

whether a party was entitled to collect payments under the agreement was not an abuse of discretion. *Id.* In other words, while the parties could use the affidavit testimony to establish the existence of the agreement—an independent factual condition—they could not use affidavit testimony to establish the content or terms of the agreement.

Here, Bitterroot offers Vance's testimony to prove a similar factual condition: the existence and receipt of a Notice of Acceleration in 2009. While this condition was effectuated by the letter, the testimony is not being used to prove up the contents of that letter. The Court agrees with Judge Primomo and concludes that the factors outlined in *R.R. Mgmt.* favor the finding that Vance intended to testify as to the existence of the letter, rather than its content.

For instance, this case is not about the sufficiency of the letter's particular language or whether it clearly and unequivocally notified the Vances that the entire debt was due. BONY does not dispute the content of the letter so much as it disputes the very existence of it. Bitterroot's focus is similarly on the existence of the notice and the timeline, rather than the specific content or language used in the purported letter. This is the central issue here. While the content of the letter admittedly has some importance, it is referenced solely to establish the existence of the notice and when it was received. Further, the relevant content of the letter and whether it was sufficient to notice an acceleration is relatively simple, and there is little risk of allowing a testimonial account of that content solely to establish the existence and receipt of the notice.

Also, as noted by Judge Primomo, Vance's testimony is chronologically consistent with evidence that in late 2008 the Vances received notices of intent to accelerate. In one notice provided by Bitterroot, Countrywide stated that if the default was not cured on or before January 2, 2009, the mortgage payments would be accelerated with the full amount remaining becoming due. ECF No. 111–7. Vance testified that she did not pay and received a notice of acceleration in

February or March of 2009. Further, the Vances apparently moved out of the house due to their belief that foreclosure was imminent, and they no longer have any ownership or interest in the property. BONY does not raise any substantial reason why Vance's recollection here regarding the receipt of the notice of acceleration would be tainted by bias or self-interest, other than the conclusory assertion that Vance "is not credible." Obj. 4, ECF No. 116. The Court refuses to close its eyes to evidence of an acceleration based on such argument.[5]

Finally, it is undisputed that the original document cannot be produced here. According to BONY, it does not exist. According to Bitterroot, the document is no longer in the Vances' possession. There is no other method for establishing the existence of the purported notice or when it was received. As the Fifth Circuit has noted, "a court must be careful in applying these factors so as not 'to hamper the inquiry without at all advancing the cause of truth.'" *R.R. Mgmt.*, 428 F.3d at 219. This Court finds that excluding Vance's testimony here and requiring the production of a document that is undisputedly not in the possession of any of the parties would merely hamper the inquiry here as to whether BONY, or its predecessors in interest, accelerated the lien more than four years prior without advancing the cause of truth.

Ultimately, the critical issue here is whether the loan was accelerated and, more specifically, whether the Vances received a notice of that acceleration in 2009. Vance testified that she did receive such a notice. The Best Evidence Rule allows Vance's testimony to prove the existence and receipt of the purported notice as an independent factual condition, even if it is

[5] BONY argues that the Vances' inability to produce the notice of acceleration renders her testimony unreliable, and that she lacks credibility because during the deposition she relied in part upon an affidavit which was drafted by Bitterroot's counsel. Further, BONY argues Bitterroot is not credible source of evidence based on its "rich history of nearly fifty (50) lawsuits alleging identical facts." Obj. 4, ECF No. 116. However, while the ultimate factfinders may weigh the credibility of evidence, this Court may not when deciding a motion for summary judgment. The Court's consideration of bias or self-interest is limited solely to determining whether the testimony here triggers the Best Evidence Rule.

effected through the notice, a writing. The Best Evidence rule merely prevents Vance's testimony from being used to prove up the factual contents of the document itself, unless some other exception applies. Indeed, the Fifth Circuit has allowed affidavit testimony to prove the *existence* of a debt in *Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1993). This Court sees no reason why similar testimony should not be permitted to prove the *acceleration* of a debt, particularly at the summary judgment stage when no other documentation of the acceleration is in the possession of any of the parties. For the reasons stated above, the Court agrees with Magistrate Judge Primomo that Vance's testimony here is admissible under Rule 1002.

*b. Unobtainable original exception to the Best Evidence Rule*

Further, assuming plaintiff does seek to prove the contents of the letter with Vance's testimony, an exception to the Best Evidence Rule may apply because the original is lost or destroyed, or the original otherwise cannot be obtained. As noted in Judge Primomo's current Report and Recommendation, Rule 1004 of the Federal Rules of Evidence serves as an exception to the Best Evidence Rule, stating that "[a]n original is not required and other evidence of the content of a writing . . . is admissible if all originals are lost or destroyed, and not by the proponent acting in bad faith [or] an original cannot be obtained by any available judicial process." FED. R. EVID. 1004. "Failure to recognize this excuse for complying with the basic rule would mean a return to the bygone and unlamented days in which to lose one's paper was to lose one's right." 2 McCormick on Evidence § 237 (7th ed.).

Based on Vance's testimony, she "did not keep a lot of . . . documentations" from the time they lost the house, the Vances "received the documents [showing acceleration in 2009]" but "don't have them in [their] possession," and she had no documents in her possession that unequivocally state that the note was accelerated in 2009. Vance Depo. 55:17–57:3–6. It is further

undisputed that none of the parties, including Bitterroot and BONY, have a 2009 acceleration notice in their possession. BONY objects to the Court allowing Vance to testify regarding the contents of the letter because this "assumes, without support [that the letter] is lost, destroyed, or otherwise cannot be obtained." Obj. 4. However, the evidentiary record clearly suggests that the documents, if they exist, are not in the possession of any party. In the context of a summary judgment motion, the evidence of the nonmovant—Bitterroot—is to be believed, and this Court must make all reasonable inferences in Bitterroot's favor. Based on Vance's testimony offered by Bitterroot, this Court must assume Vance moved out of the house in 2009, did not keep a lot of documentation during her that period of time, and no longer has the 2009 acceleration letter. It is a reasonable inference that the letter—assuming it existed, as this Court must—has been lost or destroyed, or is otherwise unobtainable by judicial process.[6] Accordingly, even if Rule 1002 normally would prohibit the admission of Vance's testimony in favor of the notice itself, Rule 1004 may excuse this requirement.

c. *The effect of the Fifth Circuit's holding in* Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.

As noted above, BONY's objection also insists that a recent holding by the Fifth Circuit controls in this matter and requires this Court to find testimonial evidence of a borrower's receipt of a notice of acceleration insufficient to raise a question of material fact. Obj. 6.

In that case, District Judge Ezra considered an action brought by Bitterroot against MTGLQ, a security interest holder on a property in San Antonio, alleging foreclosure proceedings had been initiated outside the same four-year statute of limitations at issue here. Judge Ezra partially granted MTGLQ's motion for summary judgment, finding that the previous notices of

[6] Assuming the document was lost or destroyed, there is no evidence in the record to suggest that it was lost or destroyed by the proponent here: Bitterroot.

acceleration issued had been abandoned. *Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*, 2015 WL 6442622, at *7 (W.D. Tex. October 23, 2015). Bitterroot had claimed that affidavit testimony by the homeowner/borrower created a fact issue as to detrimental reliance, arguing a lender may not abandon acceleration of a debt when the debtor had relied upon the acceleration to his or her detriment. *Id.* Defendant MTGLQ did apparently object to the admission of the testimony under the Best Evidence Rule on the basis that the homeowner/borrower testified that he received a notice of acceleration letter. *Id.* at * 3. Judge Ezra's approach was identical to the analysis here: the testimony was not admissible as evidence of the contents of the notice of acceleration, but it was admissible to show that the homeowner/borrower had received a notice of acceleration at a particular date. *Id.* However, while Judge Ezra admitted the testimony, he found that it *did not* create a fact question as to detrimental reliance because there was no evidence that the homeowner/borrower actually changed his position to his detriment. *Id.* at * 8. On appeal, the Fifth Circuit affirmed Judge Ezra's analysis regarding detrimental reliance, but did not consider the Best Evidence Rule issue. *Bitterroot Holdings L.L.C. v. MTGLQ Investors, L.P.*, 648 F. App'x 414, 418 (5th Cir. 2016).

BONY seems to argue that the Fifth Circuit's holding was that the affidavit evidence "was insufficient to raise a genuine issue of material fact that a Notice of Acceleration was sent," and that this Court should take that to mean that affidavit testimony can never raise such a fact question. Obj. 6. However, this conclusion is not supported by the language of the Fifth Circuit's opinion. As noted by Judge Primomo, while the underlying facts are similar, "the critical issues in MTGLQ Investors, L.P. bear little relation to this case." R. & R. 19, ECF No. 114 (internal citations omitted). In short, that case centered on detrimental reliance, which is not at issue here.

Neither is BONY's argument supported by the analysis in Judge Ezra's original opinion, which the Circuit affirmed. The Court has scrutinized both the Fifth Circuit and District Court opinions and can find no support for BONY's contention that the result in *Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.* mandates a finding that no genuine issue of fact exists as to when the notice of acceleration was received. To the contrary, the results in that case seems to *support* this Court's analysis, particularly since Judge Ezra admitted the homeowner's testimony in order to establish the date of the notice of acceleration. Accordingly, this Court agrees with Judge Primomo and will overrule BONY's objections.

**B. BONY's Dual Motions for Summary Judgment**

The second set of motions before the Court is BONY's dual motions for summary judgment, which were filed concurrently on December 28, 2016. The first motion for summary judgment is for BONY's counterclaims against Bitterroot and BONY's third-party claim against the Vances. ECF No. 117. The second motion for summary judgment is for the Vances' counterclaims against BONY. ECF No. 118. Those claims had largely been disposed of by Judge Primomo's November 2015 Report and Recommendation, but they were not actually dismissed due to the administrative close pending the Fifth Circuit's determination in *Bitterroot Holdings LLC v. MTGLQ Investors, LP.* The Vances responded to both motions on January 20, 2017. ECF No. 121. Bitterroot has not filed a response, and BONY did not submit a reply. The Court will group its analysis based on the claims against each party.

**1. *BONY's counterclaims against Bitterroot***

In a counterclaim, BONY sought recovery of attorney's fees and costs expended in the defense of this lawsuit. ECF No. 1–4. Further, BONY requested a judicial foreclosure pursuant

to Rule 309 of the Texas Rules of Civil Procedure, including issuance of a judgment permitting a Bexar County official to seize and sell the property to satisfy the debt owed on the note. *Id.* Finally, BONY sought a declaratory judgment that BONY's lien is valid and that BONY is entitled to foreclose on the property to satisfy the debt owed by the Vances. *Id.* In its motion for summary judgment, BONY seeks summary judgment on these claims. ECF No. 117.

Bitterroot did not respond to the motion. Normally, this Court would take the motion as conceded. However, the Vances did respond, arguing that the motions should be denied based on previous rulings by Judge Primomo. According to the Vances, the only new argument is "the erroneous assertion that even if BONY's claims are barred by expiration of the statute of limitations, that the filing of a counterclaim saves BONY under *Tex. Civ. Prac. & Rem. Code § 16.069*." Resp. 4, ECF No. 121. The Court will therefore consider BONY's counterclaims in light of the Vances' arguments and previous rulings from Judge Primomo.

*a. Attorney's Fees*

BONY seeks summary judgment on its counterclaim for an award of attorney's fees and costs incurred in the defense against this lawsuit based upon the deed of trust. ECF No. 1–4. The deed of trust provides that "if there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument." Deed of Trust 6 ¶ 9, ECF No. 117–3. "Any amounts disbursed by [BONY] under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." *Id.* This includes "paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument." *Id.* "Lender" was originally defined as Countrywide Home Loans, Inc., but Countrywide later merged with Bank of America, who

conveyed its interest to BONY. Deed of Trust 1; Assignment of Deed of Trust, ECF No. 117–4. BONY therefore stands in as the "lender" here. "Borrower" is, and remains, Robert and Gretchen Vance. *Id.*

At the outset, there appears to be an enforceable contract that permits the recovery of attorney's fees as an additional debt of the Vances. However, as noted, there is a fact question as to whether the lien is void—that requires determination by a factfinder. This may affect whether the attorney's fees would become the additional debt of the borrower, and whether that debt remains secured by property lien or, if the lien is void, whether the additional debt is unsecured. That is unclear. In any event, it would be premature for this Court to make any such determinations before the fact question is answered. Further, BONY makes clear that it is not seeking a monetary judgment against the Vances in this lawsuit, only Bitterroot. *See* Mot. Summ. J. 27, ¶ 71 ("BONY does not seek a monetary judgment against the Vances.") (emphasis in original). The Court therefore need not reach the issue of attorney's fees between the Vances and BONY.

More importantly, however, it is unclear to this Court why the contract should—or even how the contract could—be enforced against Bitterroot. The Vances are the "borrowers" here, not Bitterroot. For reasons that should be obvious, the Court refuses to issue a judgment enforcing the terms of a contract against a non-party. Indeed, BONY seems to understand that enforcement against Bitterroot, a non-party to the contract, is dubious. BONY admits that "[w]hile Bitterroot is not a party to the Note or Deed of Trust, he [sic] took title subject to BONY's rights and then brought suit to compromise those rights," accusing Bitterroot of filing claims that are "groundless, frivolous, and not filed in good faith." Mot. Summ. J. 15. Thus, despite the motion's explicit reliance on the contractual terms, BONY appears to be arguing for this Court to impose sanctions on Bitterroot under an applicable rule of procedure rather than as a term of a contract that does not

exist between BONY and Bitterroot. The Court will therefore not consider the contract in determining whether to award sanctions.

BONY's counterclaims also allege that Bitterroot's pleadings violate Tex. Civ. Prac. & Rem. Code §§ 9.011 & 10.001 because they are "(1) groundless and brought in bad faith; (2) groundless and brought for the purpose of harassment; or (3) groundless and interposed for an improper purpose, such as to cause unnecessary delay or needless increase in the cost of litigation." ECF No. 1–4. However, there is no evidence that the claims here by Bitterroot are groundless. Quite the opposite, this Court has determined a fact issue exists that requires a fact-finder to determine whether the debt was accelerated in 2009. If so, Bitterroot's claims succeed. Further, there is no evidence that the claims were brought in bad faith, for the purpose of harassment, or for any other improper purpose. The fact that Bitterroot has brought similar cases before is not evidence of bad faith, harassment or improper purpose, absent some other aggravating circumstance. BONY is not entitled to summary judgment regarding an award of attorney's fees. The motion will be denied.

*b. Judicial Foreclosure*

According to BONY, it is also entitled to a judgment permitting judicial foreclosure under Rule 309 of the Texas Rules of Civil Procedure. That rule provides:

> Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators, and guardians, that an order of sale shall issue to any sheriff or constable within the State of Texas directing him to seize and sell the same as under execution, in satisfaction of the judgment; and, if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to take the money or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions.

TEX. R. CIV. P. 309. A lienholder seeking judicial foreclosure on a lien must contain allegations of execution and delivery of a secured debt instrument such as a note, as well as execution and delivery of the lien instrument, ownership of the debt instrument, the amount of unpaid debt, default by the borrower, and a description of the property securing the debt. *Graves v. Drane*, 1 S.W. 905 (Tex. 1886); *Miles Realty Co. v. Dodson*, 8 S.W.2d 516 (Tex. Civ. App.—Amarillo 1928), writ dismissed w.o.j., (Jan. 30, 1929); *Shaw v. American Life Ins. Co.*, 60S.W.2d 1110, 1111 (Tex. Civ. App.—Fort Worth 1933, writ dism'd).

It is perhaps unnecessary to state that the relevant lien must be valid in order to effectuate a judicial foreclosure proceeding or that a void lien may not be judicially foreclosed upon. BONY argues that its lien is valid, citing to the deed of trust. ECF No. 117–4. However, as previously noted, Bitterroot's entire suit is premised on BONY's lien being void due to a failure to foreclose within the applicable four-year period under Tex. Civ. Prac. & Rem. Code 16.035(d). There remains a genuine dispute of material fact as to whether the debt was accelerated in 2009 and, therefore, whether BONY's attempt to foreclose in 2014 was untimely, voiding the lien. As a result, this Court cannot simply accept the lien as valid and, therefore, cannot grant summary judgment as to the judicial foreclosure counterclaim.

BONY makes a peculiar assertion that even if the statute of limitations to foreclose did expire, its "counter claim for judicial foreclosure preserves the statute of limitations so that BONY can at least foreclose through the judicial foreclosure process." Mot. Summ. J. 11, ECF No. 117 (emphasis not included). For support, BONY cites to Tex. Civ. Prac. & Rem. Code 16.069, which states:

> COUNTERCLAIM OR CROSS CLAIM. (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required. (b) The

> counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX. CIV. PRAC. & REM. CODE §16.069.

The Vances contend this is the only new legal theory raised in BONY's motions and, therefore, the only issue that this Court need reach. For the reasons articulated below, the Court disagrees as to the need to address other issues raised in the motions.[7] However, this Court does agree that Tex. Civ. Prac. & Rem. Code § 16.069 cannot preserve BONY's counterclaim for judicial foreclosure if the debt was accelerated in 2009. Under the purported timeline, BONY was required to initiate foreclosure proceedings or abandon the acceleration within four years. Failure to do so would void the lien and the power of sale. TEX. CIV. PRAC. & REM. CODE § 16.035(d). Assuming the note was accelerated in February or March of 2009, BONY was therefore required to foreclose or abandon by February or March of 2013, or the lien would be void. BONY sent a notice of acceleration on August 11, 2014, and Bitterroot filed the instant suit on August 28, 2014. BONY asserted counterclaims for judicial foreclosure in the third-party complaint filed on September 26, 2014. ECF No. 3. This was well past the 2013 deadline which Bitterroot argues voided the lien here.

A void lien is forever void. It is no more. It has ceased to be. Assuming Bitterroot's 2009–2013 timeline is correct, BONY's lien is bereft of life, and section 16.069 cannot raise it from the dead. A party cannot fail to foreclose on a lien, lose the lien, and then revive the lien by filing a counterclaim in a trespass to try title lawsuit. Such an interpretation of the effect of section 16.069

[7] BONY's motions for summary judgment also address the Vances' counterclaims against BONY, which Judge Primomo did not address in his Report and Recommendation, ECF No. 114. However, Judge Primomo did address similar motions in his original Report and Recommendation, ECF No. 77. The Court will assess those claims separately below, in light of the record and Judge Primomo's original filing.

would allow virtually any party to revive a void lien, wreaking havoc on foreclosure proceedings throughout the State of Texas. There is no support for such an interpretation.

As noted in the Vances' response, the Texas legislature's intent with section 16.069 "is to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction is barred by limitations before asserting its own claim." *Ball v. SBC Communs., Inc.*, 2003 WL 21467219 (Tex. App.—San Antonio, 2003) (citing *Hobbs Trailer v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 88 (Tex. 1977)). While Tex. Civ. Prac. & Rem. Code § 16.035(d) is often referred to as a statute of limitations, it is not merely a procedural bar to suit. Rather, the language of section 16.035 voids a lien upon the failure to bring suit or force a sale within four years of accelerating the lien. TEX. CIV. PRAC. & REM. CODE § 16.035(d). But section 16.069 makes no mention of liens or foreclosure, and there is no support for BONY's assertion that section 16.069 serves to revive a lien.

BONY points to no authority supporting the assertion that a counterclaim preserves the ability to judicially foreclose even if the lien is void. Accordingly, BONY is not entitled to summary judgment on its claim for judicial foreclosure, and the motion will be denied.

*c. Declaratory Judgment*

BONY asserts that this Court has the power to declare rights, status, and other legal relations of the parties here pursuant to Texas' Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.003. BONY requests that the Court declare the lien valid and that BONY is entitled to foreclose. However, for the reasons already articulated, such a declaration is precluded by a genuine dispute of material fact concerning the timeline of debt acceleration and whether the lien is actually void under Tex. Civ. Prac. & Rem. Code § 16.035. Accordingly, this Court cannot issue any such declaratory judgment. The motion will be denied.

### 2. *BONY's third-party claim against the Vances*

BONY also moved for summary judgment on its third-party claims against the Vances. ECF No. 117. In the third-party complaint, BONY raises only two of the claims discussed above: judicial foreclosure under Tex. R. Civ. P. 309 and a declaratory judgment that BONY's lien is valid and enforceable.[8] However, the Vances previously moved to dismiss those claims, ECF No. 104, and Judge Primomo recommended that the motion be granted. ECF No. 114. For the reasons previously stated, this Court will accept Judge Primomo's recommendation and dismiss these claims. BONY's motion for summary judgment on those claims will therefore be denied.

### 3. *The Vances' counterclaims against BONY*

In a counterclaim, the Vances allege that BONY committed wrongful acts in bringing the Vances into the lawsuit. Specifically, the Vances allege the following fraudulent acts:

a. BONY misrepresented its ability to file suit in this case.

b. BONY failed to state to the court that an acceleration of the Note had occurred in 2008, and

c. BONY inherently represents that its suit is not time barred, when it is fully aware that its Complaint is frivolous and without merit.

ECF No. 30. Thus, according to the Vances, BONY's claims against them are attempts to collect a debt outside the statute of limitations, which is actionable under the FDCPA, TDCA, and DTPA.

In its fourth motion for summary judgment, BONY sought judgment on the Vances counterclaims, arguing the Vances' claims under the Fair Debt Collection Practices Act (FDCPA), Texas Debt Collection Act (TDCA), and the Deceptive Trade Practices Act (DTPA) should be

[8] Curiously, there is no mention of the enforcement of the deed of trust's language regarding attorney's fees.

dismissed. ECF No. 118. BONY's arguments for dismissal are (1) that there is no admissible evidence that BONY's statute of limitations expired, (2) that the Fifth Circuit's holding in *Bitterroot Holdings LLC v. MTGLQ Investors, LP* controls, (3) that the statute of limitations did not expire, (4) the Vances' DTPA claims fail as a matter of law because they are not consumers and have not pled sufficient facts, and (5) that the Vances fail to allege violations of the TDCA and FDCPA. ECF No. 118.

The Court has previously addressed—and rejected—BONY's arguments on the first three issues, and it would be repetitive and unnecessary to recite and then reject them again. Suffice to say the Court rejects them here. However, this Court has not addressed the sufficiency of the Vances' claims under the DTPA, TDCA, and FDCPA. The Court will therefore address only BONY's final two arguments.

*a. Fair Debt Collection Practices Act*

As noted, the Vances filed counterclaims against BONY for violations of the FDCPA for misrepresentations made in its attempt to collect a debt through this lawsuit. ECF No. 30. BONY argues that initiating a foreclosure under a deed of trust is not debt collection under the FDCPA. ECF No. 118. The Vances respond that Magistrate Judge Primomo has previously ruled on this issue, and that this Court should deny the motion because a fact issue remains regarding the date of acceleration. However, neither Judge Primomo's November 2015 Report and Recommendation, ECF No. 77, nor the current Report and Recommendation, ECF No. 114, resolve the FDCPA claims.[9] The Court will do so here.

---

[9] In his current Report and Recommendation, Judge Primomo remarked that he had previously recommended dismissal of the FDCPA claim under 1692f. ECF No. 114. Upon review, however, the report appears to reference the FDCPA claims under 1692e and 1692f, but Judge Primomo does not actually analyze the claims or recommend their dismissal

The FDCPA creates two "mutually exclusive" categories, debt collectors and creditors, but only debt collectors are regulated by the statute. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 498 (7th Cir. 2008). Critically, the regulatory provisions apply only to a "debt collector," which is statutorily defined as one "who uses any instrumentality of interstate commerce or the mails in any business [1] the purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Creditors," on the other hand, are persons "who offer[] or extend[] credit creating a debt or [persons] to whom a debt is owed." 15 U.S.C. § 1692a(4). Debt collectors are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "the threat to take any action that cannot legally be taken," 15 U.S.C. § 1692e(5), and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). The Supreme Court recently held that the plain terms of this language focuses on third-party collection agents working for the owners of debt, "not on a debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721 (2017).

BONY is not a debt collector. There is no evidence to indicate the principal business of the bank is debt collection or that the bank is attempting to collect debts owed or due another. That is, BONY is a creditor, rather than a debt collector, because it is seeking to recover debt currently owed to itself. Indeed, "[t]he activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA." *Bittinger v. Wells Fargo Bank, N.A.*,

in his original Report and Recommendation. ECF No. 77. Judge Primomo did address the TDCA and DTPA claims in the original Report and Recommendation. *Id.* Those claims are covered below.

744 F.Supp.2d 619, 626 (S.D. Tex. 2010) (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 190 (S.D. Tex. 2007), *aff'd*, 269 Fed. Appx. 523 (5th Cir. 2008)). Thus, the regulatory prohibitions of the FDCPA do not apply here, and the Vances' counterclaims under the FDCPA fail as a matter of law. BONY is therefore entitled to summary judgment as to the FDCPA claims. Those claims will be dismissed.

*b. Texas Debt Collection Act*

Similarly, the Vances' counterclaims allege that the filing of this suit past the expiration of the statute of limitation constitutes an unfair, unconscionable, and deceptive method of collecting a debt under Texas law. ECF No. 30. Indeed, the TDCA prohibits debt collectors from using any false representations or deceptive means to collect a debt, including "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding" or "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE §§ 392.304(a)(8), (19). Critically, unlike its federal analog, "debt collectors" under the TDCA includes anyone who directly or indirectly acts to collect on a consumer debt. TEX. FIN. CODE §§ 392.001(6), (5).[10] Thus, this applies to debt collection by third-party debt collectors and mortgage lender/creditors like BONY. The Vances allege that BONY's third-party complaint against them constitutes unfair or deceptive acts under §§ 392.304(a)(8) and 392.304(a)(19).

BONY argues that these conclusory allegations cannot support a TDCA action because they do not identify any specific amount demanded by BONY or why that amount is incorrect. Further, BONY argues that there is no affirmative statement that was false or misleading. Again,

[10] "Consumer debt" means "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001.

the Vances rest on Judge Primomo's previous findings. In his November 2015 Report and Recommendation, Judge Primomo found that the Vances failed to state a claim under section 392.304(a)(8) because the Vances did not identify any specific amount BONY demanded, or why the character, extent, or amount of debt owed was incorrect. ECF No. 77. This Court agrees, and that claim will be dismissed.

Judge Primomo did find, however, that the Vances had stated a claim under 392.304(a)(19). Judge Primomo correctly recognized that, in order "[t]o violate the TDCA using a misrepresentation, 'the debt collector must have made an affirmative statement that is false or misleading.'" *Verdin v. Federal Nat'l Mortg. Ass'n*, 540 Fed. App'x 253, 257 (5th Cir. 2013) (quoting *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013)). Judge Primomo determined the statement in BONY's third-party complaint that BONY's lien was valid constituted an affirmative statement that the lien was valid, and that statement would be false if the lien was, in fact, void. ECF No. 77. In other words, Judge Primomo found that BONY's assertion of a potentially void lien against the Vances could be false or deceptive means of collecting on a debt under the TDCA.

The Court notes that the Fifth Circuit has held that the FDCPA prohibits the threat of litigation or actual litigation to collect on a time-barred debt. *See Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011). However, while the conduct made unlawful by the TDCA is virtually identical to conduct made unlawful by the FDCPA, this Court is unaware of any Texas case law on point definitively stating that an attempt to judicially foreclose on a time-barred lien is actionable under the TDCA as false, misleading, or deceptive means of collecting a debt. Still, Judge Primomo's analysis relies on such a conclusion, and BONY did not object to this analysis.

But even assuming that the threat of litigation or actual litigation concerning a time-barred lien *could* constitute a false representation or deceptive means to collect a debt, a TDCA plaintiff must prove actual damages that result from an alleged violation. *See* TEX FIN. CODE § 392.403 (providing that a person may sue for "actual damages sustained as a result of a violation of this chapter"); *Elston v. Resolution Services. Inc.*, 950 S.W.2d 180, 185 (Tex. App.—Austin 1997, no writ) (affirming grant of summary judgment for defendant where plaintiff failed to establish that he suffered actual damages related to alleged violations of the TDCA). The alleged violation here is the affirmative representation that BONY had a valid lien on the property, asserted through a third-party complaint against the Vances. There is no evidence, however, that the Vances suffered any actual damages as a result of this representation. BONY's third-party complaint does not seek any damages or the collection upon any debt owed by the Vances. ECF No. 3. Rather, BONY sought a judicial foreclosure and declaration that the lien was valid. *Id.* It is difficult to see how this could harm the Vances, who had already vacated the property and lack any interest in the property based on the 2010 foreclosure by the Homeowners Association.

The Vances' alleged damages are for "out-of-pocket expenses, costs, and attorney's fees to defend this action," and "mental anguish [suffered] as a result of being sued for nearly $1,000,000.00 in damages for which the Vances are not legally obligated." ECF No. 30. But the Vances have provided no evidence as to out-of-pocket expenses, save for the assertion that they had taken time off work to "handle these issues" and had incurred some travel expenses. Vance Depo. 73:15–19, ECF No. 111–4. However, Vance made it clear that she is not seeking lost wages. *Id.* at 74:18–23. There was no testimony as to any specific expenditures, other than attorney's fees which are addressed below. Ultimately, the Vances have supplied no evidence of a link between BONY's counterclaim and any actual damages in the form of out-of-pocket expenses.

Similarly, the Vances have provided no evidence of any mental anguish resulting from this lawsuit. While mental anguish damages are a form of actual damages under Texas law, *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 473 (Tex. 2015), the mental anguish must be sustained "as a result of a violation [of the TDCA]." TEX. FIN. CODE § 392.403(a)(2). To be sure, the Vances' counterclaim does include a conclusory assertion that they suffered "anxiety, depression, stress, fright, grief and distress as a result of being sued." ECF No. 30. But in her deposition, Gretchen Vance testified that her mental anguish damages were the result of "a very stressful situation . . . going on for a long time," referring to the entire seven year period in which the Vances had experienced problems with debt, the foreclosure of the property, relocating to Austin, having to rent a home there. Vance Depo. 76:18–20, 77:1–3, 78:18–80:22, 87:4–88:6. Ultimately, while the Vances undoubtedly have suffered anxiety and stress as a result of their ongoing debt issues, such damages predate the accrual of the instant suit. Such anxiety does not arise from BONY's assertion of a valid lien on the property, particularly when the Vances no longer have any interest in the property.

Further, to recover mental anguish damages, plaintiffs must introduce direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine. *See Reyelts v. Cross*, 968 F. Supp. 2d 835, 846 (N.D. Tex. 2013), *aff'd* 566 Fed. Appx. 316; *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). The evidence must show a "high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Jabri v. Alsayyed*, 145 S.W.3d 660, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.). While Mrs. Vance testified that her debt situation was very stressful, there is no evidence that *this lawsuit* resulted in a substantial disruption to the Vances' daily routine. Vance testified that she

feels like she is being "held hostage in this case" because "everything is on hold," they cannot buy a home, the foreclosed upon property remains on their credit-report, and she has had to tell her children "no" because they "can't do certain things." Vance Depo. 75:3–9; 78:10–14, 84:4–11. She also testified that she sees a family counselor to talk about these "financial stresses," but that she does not take any medication for depression or anxiety. *Id.* at 78:10–80:12. Vance also testified that she has not had to seek any medical treatment for anything related to this lawsuit. *Id.* at 76:10–14. Mrs. Vance's testimony regarding general anxiety and "financial stress" is not a sufficiently high degree of mental pain or distress that is more than mere work, anxiety, vexation, embarrassment, or anger. Simply put, there is no evidence that Mr. Vance suffered any mental anguish at all. Thus, the Vances have failed to raise any evidence of actual, mental anguish damages.

Finally, Vance testified that they had incurred attorney's fees as a result of BONY's suit. Vance Depo. 74:4–15. But these expenses cannot be damages giving rise to a TDCA claim, lest the "actual damages" requirement lose all meaning. Tex. Fin. Code § 392.404(b) separately allows an award of attorney's fees if a party is successful in bringing suit, and "a party may only be awarded attorney's fees if he successfully maintains an action for 'actual damages sustained as a result of a violation' of the Act." *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30–31 (Tex. App.—Tyler 2000, pet. denied) (emphasis added). Thus, the Vances cannot use incurred attorney's fees as the actual damages giving rise to their TDCA claim.

Ultimately, the Vances can point to no actual harm as a result of plaintiff filing this lawsuit. BONY's attempt to execute a lien and foreclose on a property that the Vances do not own or reside in results in no harm to the Vances, even if the lien is void. BONY is not seeking any damages, or any monetary recovery at all, from the Vances. The purported misrepresentation here—that

BONY's lien is valid—was not made "to collect money on a debt or obtain information concerning a consumer" under Tex. Fin. Code § 392.304(a)(19). While the filing of a third-party complaint may constitute an affirmative statement sufficient to constitute an actionable misrepresentation, there is no current link between the property lien and the Vances. The filing of an action for judicial foreclosure based on a void lien may normally be an actionable violation under the TDCA, but this case is abnormal. Unless he can otherwise establish actual damages, a party cannot file claims under the TDCA for alleged misrepresentations made in a foreclosure action (1) regarding a property that they have no property or equitable interest in, (2) when he unquestionably defaulted on the loan secured by the lien and property at issue, and (3) when the other parties are not seeking to collect on the debt or obtain other relief from the debtor. Thus, even if the lien is void, the Vances have failed to establish in any of their responses to the motions for summary judgment that they suffered actual damages related to the only alleged violation here: BONY's assertion of a valid lien against the property. They failed to carry the burden of proof in the summary-judgment stage, and BONY is entitled to summary judgment as a matter of law. The TDCA claims will be dismissed.

c. *Deceptive Trade Practices Act*

The Vances' remaining counterclaim is for violation of the DTPA. The elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); TEX. BUS. & COM. CODE § 17 .50(a)(1). The TDCA includes a tie-in provision, and, as a result, violations of the TDCA are actionable as a deceptive trade practice under the DTPA. TEX. FIN. CODE § 392.404;

TEX. BUS. & COMM. CODE § 17.46. The Vances rely on this tie-in provision, alleging that BONY's violations of the TDCA are also violations of the DTPA.

Critically, though, a DTPA plaintiff must be a "consumer" under the relevant statutory definition. TEX. BUS. & COMM. CODE § 17.50. The definitions of "consumer" under the TDCA and DTPA are different, and individuals who are consumers under one may not be under the other. *Compare* TEX. BUS. & COM. CODE § 17.45(4) ("'Consumer' means an individual . . . who seeks or acquires by purchase or lease, any goods or services . . . ."), *with* TEX. FIN. CODE § 392.001(1), (2) ("'Consumer' means an individual who has . . . an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction."). "To qualify as a consumer [under the DTPA], the plaintiff 'must have sought or acquired goods or services by purchase or lease,' and those 'goods or services . . . must form the basis of the complaint.'" *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 768 (5th Cir. 2016) (quoting *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987)).

BONY contends that the Vances' DTPA claims should be dismissed because they are not consumers. That is, they did not acquire a good or service that forms the basis of their DTPA claim because their claim arises solely from conduct by BONY long after the initial purchase that is separate and distinct from the good or service they originally sought: a mortgage loan. The Vances, in their response, did not address this argument. However, as noted by BONY, as well as Judge Primomo in his November 2015 Report and Recommendation, ECF No. 77, a person seeking to borrow money is generally not a consumer under the DTPA because money is not a good or service. *Allen v. Dovenmuehle Mortg. Inc.*, 2014 WL 3579812, at * 7 (N.D. Tex. July 21, 2014) (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984)). A mortgagor may qualify as a consumer if he or she acquired, or sought to acquire, a

purchase money loan in order to purchase their property and the property forms the basis of the complaint. *See Miller v. BAC Home Loan Servicing, LP*, 726 F.3d 717, 725 (5th Cir. 2013). But the same mortgagor who later modifies the loan based on misrepresentations cannot sue under the DTPA because the modification, or refinancing, is not sought for the acquisition of a good or service, "but rather to finance an existing loan on previously acquired property." *Id.* (citing *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011)). In other words, the modification or refinancing would not be actionable under the DTPA because it an "entirely separate and distinct transaction sought after the purchase of the house was complete." *Ayers*, 787 F. Supp. 2d at 455. Such a pure loan transaction does not qualify under the DTPA. *Id.*

Likewise, BONY's conduct here—a statement that their lien is valid and enforceable against Bitterroot—here is entirely separate and distinct from the original good or service sought by the Vances: a purchase money loan from Countrywide. The Vances have not sought or acquired any goods or services from BONY. That BONY acquired and serviced the loan subsequently is incidental to this transaction, and does not render the Vances consumers under the DTPA.

Because the Vances are not consumers under the DTPA, BONY is entitled to judgment on those claims as a matter of law. Accordingly, the DTPA claims will be dismissed.

*d. Attorney's Fees*

Finally, both of the dual motions include identical language requesting an award of attorney's fees and costs to BONY. However, it is unclear whether BONY is requesting an award against Bitterroot, the Vances, or both. Any of these options is puzzling. Bitterroot is not a party to the deed of trust allowing BONY to recover attorney's fees against the borrowers, and BONY's third-party complaint against the Vances does not include a request for attorney's fees. BONY

has also explicitly stated that it is not seeking a monetary judgment from the Vances. As noted above, the Court finds that it would be either premature or inappropriate—perhaps both—to award attorney's fees here. Therefore, while the motion for summary judgment as to the Vances' counterclaims will be granted insofar as BONY requests the claims be dismissed and the Vances take nothing, the motion will be denied insofar as it requests this Court award attorney's fees.

## V. CONCLUSION

In sum, BONY's objections to Judge Primomo's current Report and Recommendation are concerned solely with the application of the Best Evidence Rule to Bitterroot's response to BONY's motion for summary judgment. In light of the lack of any objection to Judge Primomo's recommendations concerning the other motions, the Court will adopt those recommendations and deny Bitterroot's motion [109] to remand to state court, deny Bitterroot's motion [110] to strike, and grant the Vances' motion [104] to dismiss claims against them.

For the reasons noted above, the Court also agrees with Judge Primomo's application of the Best Evidence Rule here and finds Vance's testimony is admissible, at least to prove receipt of a notice of acceleration in 2009. Accordingly, BONY's objections will be overruled. While the fact-finders at trial may ultimately believe BONY's evidence, plaintiff has presented sufficient evidence to raise a genuine dispute of material fact as to whether the loan was accelerated in 2009. This fact question requires resolution by a fact-finder, and summary judgment would be inappropriate. BONY's motion [104] for summary judgment will be denied.

Regarding BONY's dual motions for summary judgment, the fact question regarding the purported 2009 acceleration precludes summary judgment on BONY's counterclaims against Bitterroot. Similarly, BONY did not object to Judge Primomo's dismissal of its claims against the

Vances. Accordingly, BONY's motion [117] for summary judgment will be denied. However, for the reasons articulated, the Court finds that the BONY's motion [118] for summary judgment against the Vances should be granted in part and denied in part. The motion will be granted insofar as it requests Vances' counterclaims be dismissed and the Vances take nothing, but the motion [118] will be denied insofar as BONY requests an award of attorney's fees.

A separate order shall issue.

Royce C. Lamberth
United States District Judge

DATE: 8/3/17